331 P.2d 531

SOUTHERN UNION GAS COMPANY, a corporation, Third-Party Plaintiff-Appellant,

v.

BRINER RUST PROOFING COMPANY, Inc., a corporation, Third-Party Defendant-Appellee.

No. 6443.

Supreme Court of New Mexico.

Nov. 7, 1958.

Keleher & McLeod, Russell Moore, Albuquerque, for appellant.

Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for appellee.

34

SADLER, Justice.

This is an appeal by Southern Union Gas Company from a summary judgment rendered against it on its third party complaint seeking damages, contingently, against Briner Rust Proofing Company, Inc., among others, in a certain cause lately pending on the civil docket of the district court of Bernalillo County, known as Cause No. 68,492, wherein John O. Betts, a minor, suing by his father, Manley O. Betts, as next friend, was plaintiff and Southern Union Gas Company, and others, were defendants.

The primary object of the action was to recover damages for personal injuries suffered by the minor plaintiff in an explosion due, as plaintiff alleged, to the negligence of the defendants. The original complaint of plaintiff was later amended. About the same time David Boyd by his mother and next friend, Juanita Kling, suing as such and individually, filed their complaint against the same defendants in the other cause, this action being No. 66,954 on the civil docket of the district court of Bernalillo County.

Both complaints alleged substantially that the defendants, jointly, severally, and concurrently excavated, negligently laid, installed and maintained a gas system in proximity to the Premiere Motel in Albuquerque, New Mexico; and, further, that the gas pipes were of inferior quality and that defendants failed to inspect and test the gasline system for leaks; also, that the pipes installed were secondhand, rusted, corroded and of inferior grade. It was then alleged that, as a result of the negligence of the defendants, gas leaked from the pipes and an explosion resulted therefrom in which the plaintiffs were injured. Subsequently, the defendant, Southern Union Gas Company, was allowed to join as third party defendant the Briner Rust Proofing Company, Inc., and Republic Steel Company, a corporation.

The two causes mentioned, subsequently, were consolidated for purposes of trial and appeal. Since on this appeal only the complaints against Briner Rust Proofing Company, Inc., are involved, we shall quote paragraph 5 thereof, as follows:

"Southern Union Gas Company entered into a contract with Briner Rust Proofing Company, Inc., whereby Briner Rust Proofing Company, Inc., was to wrap and tar certain gas pipes for the Southern Union Gas Company; that such pipes were purchased from Republic Steel Company, a corporation; that Briner Rust Proofing Company, Inc., should have found any holes in this pipe before they were wrapped and tarred, and should have discarded such pipe; that such holes should have been found by Briner Rust Proofing Company, Inc., or such holes were made after the pipe came into its possession; that it was negligent

in not finding the holes or in causing the holes in the pipe. If the explosion was caused by any gas leaking from the pipes of the Southern Union Gas Company, then Briner Rust Proofing Company, Inc., was negligent as above stated and such negligence was the cause of or a proximately contributing cause of the injuries, if any, sustained by the plaintiff, John O. Betts."

Briner Rust Proofing Company, Inc., filed its answer consisting of a general denial to the third party complaint filed against it and later filed a motion for summary judgment, pursuant to Rule 56 of the Rules of Civil Procedure, attaching thereto affidavits of Ira B. Briner and Charles L. Slover. Southern Union Gas Company then took the deposition of Ernesto Benavidez who was in charge of the Albuquerque office of Briner Rust Proofing Company and this deposition was on file in the case prior to summary judgment. The motion for summary judgment was heard before the Honorable D. A. Macpherson, Jr., one of the district judges of Bernalillo County. At the conclusion of the hearing, the prayer of the motion was granted and an order allowing summary judgment against Southern Union Gas Company on its third party complaint was duly entered. It is from that judgment this appeal is prosecuted.

With the foregoing factual background showing alignment of the parties, we shall proceed with recital of sufficient facts to enable us to pass upon the basic question raised on this appeal. The Southern Union maintains and operates a system of gas mains in proximity to the Premiere Motel in Albuquerque, New Mexico. Certain portions of this system were to be replaced and extended by Southern Union. Incident to such improvement, it purchased a quantity of pipe from Republic Steel Company. The pipe was forwarded to Briner Rust Proofing Company, the appellee, to be cleaned, tarred and wrapped by it under a contract between the parties.

The procedure followed by appellee in cleaning, tarring, and wrapping the pipe is outlined in the deposition of Ernesto Benavidez, assistant foreman of appellee. It consists of ten basic steps in the operation and in each of those steps the pipe which is being cleaned, tarred, and wrapped is handled either manually by employees of appellee or by machines operated by employees of appellee. After the pipe in question was cleaned and wrapped by appellee, it was transported to the site where it was to be installed. The explosion out of which plaintiffs' injuries arose occurred after installation of the pipe in question.

The factual situation before the trial court discloses that appellee, the Briner Company, was simply engaged in performing services for Southern Union, the appellant, a customer. Such being true, and there is no dispute as to the relationship

of the parties, appellee challenges appellant to show any authority for the proposition that a business concern performing services for its customer owes any duty to inspect the customer's own property upon which the services are to be performed under the factual situation here disclosed.

The duty of inspection, if any, was upon Southern Union, the appellant, on the record before the trial court, as strongly urged by counsel for the Briner Company. Southern Union's contractor for the installation of this particular gasline, Mr. Alfred F. Mermis, incidentally, also a defendant in this suit by plaintiff, testified in his deposition in the cause, a pertinent portion of which is before us on this appeal by stipulation of the parties, as follows:

"Q. You spoke of a Southern Union inspector on the job down at the wrapping plant. I take it you are familiar with the wrapping process of the plant. A. Yes.

"Q. Does Southern Union have a man that checks the pipe before it is delivered to Briner for processing? A. That bare pipe, I don't know how much they check, check some of it.

"Q. Do you know for a fact that Southern Union checks some of the pipe before it is sent over to the processing plant? A. Shipped right there to the yard and tallied and checked at the processing plant to make sure they got what they bought.

"Q. By, they, are you referring to persons from Southern Union? A. From Southern Union, yes.

"Q. Do you know of any checking or testing, visual or otherwise, that is made just before the wrapping process is started? A. I don't know whether they did this particular pipe or not, as a rule they do.

"Mr. McLeod: I move the answer be stricken on the ground he doesn't know.

"Q. By, they, you mean Southern Union? A. Yes.

"Q. As a rule they check the pipe before wrapping for imperfections or defects in the pipe? A. Yes.

"Q. You know that to be true, do you? A. Yes.

"Q. Do you know who the man is who generally does that for Southern Union? A. Don't have any particular one, assign one to a certain job and he stays with it until the job is completed.

"Q. What is he called, an inspector? A. An inspector.

"Q. He inspects the pipe both before processing and during processing and after processing? A. Yes, sir.

"Q. All three times? A. Generally stays right there with it.

"Q. Do you know if he makes an inspection of the pipe for imperfections before the coating process commences? A. Yes, sir.

"Q. What type inspection, a visual one? A. A visual one."

The appellant, Southern Union Gas Company, contends that any leaks from its main gas system located near the Premiere Motel were made possible by the negligence of appellee, the Briner Company, in failing to detect holes or defects in the pipe installed in that system and the subsequent failure of appellee to discard pipe in which holes or defects were found or should have been discovered. It claims this failure on the part of appellee was the proximate cause of any injuries suffered by plaintiffs.

As is to be seen from a reading of paragraph 5 of the third party complaint, negligence on the part of the Briner Company is based upon its failure to find and locate any holes in the pipes before they were wrapped and tarred and, thereupon, in failing to discard the same. Specifically, this paragraph of the third party complaint alleges that any holes in the pipe either should have been found by the Briner Company, or such holes were made after the pipe came into its possession and that it was negligent in either not finding the holes, or in causing the holes in the pipe. It further alleged that if the explosion was caused by any gas leaking from the pipes of appellant, the Briner Company was negligent as above stated and that such negligence was the cause, or a proximately contributing cause, of the injuries, if any, sustained by the plaintiffs.

Counsel for Southern Union argues that under the facts shown by the affidavits referred to and the Benavidez deposition, when considered with the negligence alleged against appellee in the third party complaint, that there are material issues of fact to be decided by a jury and "that appellee failed to offer sufficient uncontroverted proof of its lack of negligence and due care to be entitled to a summary judgment."

If, continue counsel for appellant, Southern Union, upon trial of the case, was able to show there was in fact bent pipe delivered to appellee for cleaning, tarring and wrapping and that appellee failed to inspect and discard such or any defective pipe discovered then, of course, negligence would be shown as against appellee and a jury would be entitled to find that such negligence proximately caused the accident and injuries to the plaintiffs. In making this argument counsel rely upon certain statements in the deposition of Benavidez said to conflict with portions of the affidavits of Briner and Slover.

In answer to the foregoing argument of counsel for Southern Union, counsel for appellees say the appellant fails to state or make clear the fact *that the gas pipe in*

*question was purchased by and was at all times owned by the appellant gas company.* In order to make clear appellees' position we quote their objection to appellant's statement of facts, as follows:

"Appellant fails to state or make clear the fact that the gas pipe in question was purchased by and was at all times owned by the Appellant gas company. Appellant's Statement gives the erroneous impression that the gas pipe in question was owned by Appellee and sold and delivered to the Appellant after the cleaning, tarring and wrapping operation. The true facts are that the only reason for the gas pipe being in the Appellee's possession was its delivery by the Appellant to the Appellee's processing yard in order that the Appellant's pipe could be cleaned, tarred and wrapped by Appellee. After the wrapping process, the pipe was not, as stated by Appellant, transported to the site near the Premiere Motel where the explosion later occurred, but was delivered to and placed in the Appellant's pipe storage yard in Albuquerque, and taken from there by Appellant's contractor Mermis Construction Co. to the pipeline job site."

We believe the foregoing statements of opposing counsel bring out the relative positions of the parties and their respective contentions sufficiently to enable us to proceed to a decision of the appeal. Counsel for appellee present their case under two points the first of which reads, as follows:

"The record discloses that no duty of inspection was owed by the appellee to the appellant and in the absence thereof, no actionable negligence exists."

A careful study of the third party complaint, as well as the argument advanced in support of appellant's position, is convincing that it relies upon but a single claim of negligence, namely, the failure of appellee to inspect the gas pipe for holes or cracks before processing it. Their counsel point out the abundant opportunity obviously afforded appellee to see and observe the pipe incident to cleaning, tarring and wrapping same. Based upon this opportunity they deduce negligence on the part of appellee and its employees in failing to inspect the pipe for holes during the operation it was performing under a contract for appellant.

This brings us face to face at the very outset with the question: Was there a duty resting upon appellee and its employees to inspect? To put the matter bluntly, as appellee's counsel have done: Did appellee owe appellant the duty to inspect the latter's own pipe for defects or holes? If so, then appellee's counsel frankly admit the trial court was wrong in rendering summary judgment in favor of their client

and the judgment should be reversed. Otherwise, of course, it should be affirmed.

▇ Whether, indeed, under the circumstances of a given case, a duty exists is a pure question of law for determination by the court. Once declared to exist by the court, then any claimed breach of that duty presents a question of fact for determination by the jury or the judge sitting as finder of the facts. In the excellent work, Prosser on Torts, at page 281, the author delineates the relative function of the court and jury in a matter of this kind, as follows:

"* * * This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; *and it must be determined only by the court.* It is no part of the province of a jury to decide whether a manufacturer of goods is under any obligation for the safety of the ultimate consumer, or whether the Long Island Railroad is required to protect Mrs. Palsgraf from fireworks explosions. A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant." (Emphasis added.)

The rule of decision set out above by Prosser on Torts is given concrete application by the Supreme Court of Indiana in Union Traction Company of Indiana v. Berry, 188 Ind. 514, 121 N.E. 655, 657, 32 A.L.R. 1171, in the following language:

"The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and *it is the province of the court to determine whether such a relation is shown as gives rise to such duty.* In determining whether the relation shown gives rise to a duty to use care, *the court decides a pure question of law.* This question cannot be submitted to a jury." (Emphasis added.)

The rule is stated succinctly by the text in 38 Am.Jur. 645, "Negligence," § 4, as follows:

"* * * no man is made an insurer of his acts; he can be held liable for negligence only where he has failed to observe the standard of care which the law requires him to observe in the performance of a duty owed by him to the injured person."

See, also, 38 Am.Jur. 652, "Negligence," § 12; 65 C.J.S. Negligence § 2, p. 324 and Id., § 4, pages 332, 333. Cf. De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630. We are quite convinced there was no duty to inspect resting upon appellee.

We come next to the second point relied upon by appellee in support of the summary judgment rendered in its favor. It reads:

"To defeat a motion for summary judgment supported by affidavits, an opponent must make a showing of the existence of disputed material facts."

In summary judgment proceedings the burden rests upon the movant to show there is no genuine issue or material fact to submit to a fact finder, be it a court or jury. Nevertheless, an opposing party may not remain silent in the face of a meritorious showing by movant. As said in 10 Cyclopedia of Federal Procedure, 3d Ed., 192, § 35.22:

"* * * However, the opposing party must take some steps in their own favor in order to defeat the Motion for Summary Judgment. Thus, where the movant has made a showing in his favor, the opposing party must show that he has a plausible ground, as Plaintiff, to maintain his cause of action * * *."

We recognized this rule in the recent case of Aktiengesellschaft, etc. v. Lawrence Walker Co., 60 N.M. 154, 288 P.2d 691, 697, and quoted approvingly from Holtzoff on Federal Practice and Procedure, page 88, as follows:

"The rationale of these cases seems to be that the moving party has the burden of showing that there is no genuine issue as to a material fact and that he is entitled to judgment as a matter of law, but that when he has made a prima facie showing to this effect *the opposing party cannot defeat a motion for summary judgment* and require a trial *by a bare contention that an issue of fact exists*. He must show that evidence is available which would justify a trial of the issue. (Emphasis supplied.)"

In the case just quoted from, we added:

"When on the basis of established facts, the plaintiff is entitled to summary judgment as a matter of law, the defendant contending and arguing that there is a genuine issue of material fact cannot and will not make it so."

further emphasizing a reason back of such rule by a quotation from Morgan v. Sylvester, D.C., 125 F.Supp. 380, 390, reading:

"If a mere denial in a pleading, repeated in an affidavit unsupported by any proof, were sufficient to require the credibility of the opposing party to be determined upon a trial, it would make a shambles of Rule 56."

Furthermore, there was attached to appellee's Motion for Summary Judgment the two affidavits of Ira V. Briner and Charles L. Slover, men who had been engaged in the pipe wrapping business for many years. Their affidavits showed that

in the pipe wrapping industry no inspection is made by the wrapper of pipe furnished him for wrapping and owned by his customers. These affidavits were not controverted and as said in 10 Cyclopedia of Federal Procedure, 3d Ed., 185 in a discussion of the use of affidavits under Rule 56:

"Facts shown by affidavits and not controverted are to be taken as true."

Thus it is that the only testimony before the trial court in the summary judgment proceeding was to the effect that customarily no inspection of a customer's pipe delivered for processing was ordinarily made by the pipe wrapping company. The effect of such testimony is well stated in 38 Am.Jur. 681, "Negligence," § 34, in language, as follows:

"The conclusion to be reached upon undisputed evidence which shows that the defendant acted in accordance with the uniform custom of persons engaged in a like business, in the absence of any evidence showing that such custom is negligent, should be that the defendant did not act negligently. Ordinarily, one is not considered negligent in respect of acts which conform to a common practice that has existed for years without resulting in any injury, and that has nothing about it which shows a want of due care."

■ It was not even contended by appellant in the lower court, nor does it argue here, that inspection of the customer's own pipe is a practice in the pipe wrapping industry. What then was the situation facing the trial court upon the summary judgment proceedings? It had before it nothing more than these affidavits, the deposition testimony of Briner that appellee did not inspect its customer's pipe for holes and the deposition testimony of Mermis that Southern Union actually had its own inspector who performed this office looking for holes and other defects prior to the pipe's processing.

Can there be any doubt about the correctness of the trial court's ruling on the motion for summary judgment? We think not. If the case had been tried, a motion for new trial would have been inevitable, a test in determining the right to summary judgment. 10 Cyclopedia of Federal Procedure, 3d Ed., 180, § 35.19.

Finding no error the judgment of the trial court will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON, and SHILLINGLAW, JJ., concur.